UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSEPH H. SCHADEL,

       Plaintiff,

v.                                                          CASE NO. 3:19-cv-697-J-34JBT

ANDREW M. SAUL,
Commissioner of the
Social Security Administration,

       Defendant.
_____/

## <u>REPORT AND RECOMMENDATION</u>[1]

**THIS CAUSE** is before the undersigned on Plaintiff's appeal of an administrative decision denying his application for a Period of Disability and Disability Insurance Benefits.  In a decision dated April 2, 2019, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time from December 31, 2010, the alleged disability onset date, through December 31, 2015, the date last insured.  (Tr. 496–506.)  Plaintiff has exhausted his available administrative remedies and the case

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

is properly before the Court.   The undersigned has reviewed the record, the memoranda, and the applicable law.   For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

### I.   Issue on Appeal

Plaintiff makes the following argument on appeal: "The [ALJ] failed to apply the correct legal standards to Mr. Schadel's reports of pain."  (Doc. 15 at 1.)

### II.   Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted).  "With respect to the Commissioner's legal conclusions, however, our review is *de novo*."  *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

### III.   The ALJ's Decision

At step two of the sequential evaluation process, the ALJ found that Plaintiff had the severe impairment of "disorders of the spine with bilateral hip

osteoarthritis."[2]  (Tr. 499.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing.  (Tr. 499.)  Prior to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR 404.1567(b) except he could lift up to 20 pounds occasionally.  He could lift and carry up to 10 pounds occasionally.  He could sit, stand, and walk, and each for 1 hour at one time without interruption.  He could sit for 6 hours total in an 8-hour workday with normal breaks.  He could stand and walk, and both in combination for 4 hours total in an 8-hour workday with normal breaks.  He was limited to occasional foot control operation, bilaterally.  He was limited to occasional climbing of ramps and stairs.  He was limited to no climbing of ladders, ropes, or scaffolds. He was limited to occasional balancing, stooping, kneeling, and no crouching or crawling.  He was limited to no exposure to unprotected heights, the use of moving machinery, and vibrations.

(Tr. 499–500.)   This RFC assessment mirrored the opinions of Dr. Robert Thompson, a testifying expert.  (Tr. 504.)

At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as a store manager and a collections supervisor.  (Tr. 504–05.) Alternatively, at step five, the ALJ found that other jobs existed in significant numbers in the national economy that Plaintiff could perform.  (Tr. 505–06.) Therefore, Plaintiff was not disabled.  (Tr. 506.)

---

[2] The sequential evaluation process is described in the ALJ's decision.  (Tr. 497–98.)

## IV.    Analysis

Plaintiff argues that the ALJ erred in giving "great weight" to the opinions of Dr. Thompson, without considering Dr. Thompson's testimony regarding Plaintiff's complaints of pain.  (Doc. 15 at 13–14.)  Plaintiff asserts that "Dr. Thompson's testimony supports [his] reports of pain and limitations."  (*Id.* at 14.)   The undersigned recommends that this argument be rejected because the ALJ could reasonably conclude that Dr. Thompson's testimony was not supportive of Plaintiff's complaints of pain, but rather was neutral.  Therefore, the ALJ's analysis was supported by substantial evidence.

The relevant portions of Dr. Thompson's testimony are as follows:

> A     These [opinions] are based on the objective evidence only.
>
> [By ALJ]
>
> Q     Okay.
>
> A     For completeness, what I consider to be objective limitations, frequently objective findings that I have cited. . . .
>
> [By Plaintiff's attorney]
>
> Q     Yes, sir.  Would you agree that the impairments that you described for the record have been in fact established by objective medical signs or laboratory findings.
>
> A     Yes.  These are definitely established by objective evidence, correct.
>
> Q     Okay.  And question, doctor.  The impairments that you have described for the record, could those produce

the symptoms that the claimant is alleging?   In other words, the pain that he is experiencing?

A     I would expect him to have pain with these findings, yes.

Q     Okay.  Now, would you agree, doctor, that - -

A     Obviously, pain is a subjective issue, which I'm supposed to be essentially not dealing with.   And I personally do not feel I can fairly say anything about a person's pain having never so I'm –

Q     Sure.

A      - - refrained from trying to quantitate pain.  However, these findings in my opinion, with the ongoing pain.

Q     Got it.   Thank you for that.   And I'm assuming, doctor, that in your vast experience, you have treated folks with these findings that you can see are in quite a bit of pain, have you not, sir?

A     I have treated patients similar to this, yes, sir.

Q     Okay.

A     Many years.

Q     Excellent.  Now, doctor, one thing that I wanted to point out and see if you agree, is that through all of the medical records dealing with the orthopedic nature of this claimant's complaints, do show that the individual is complaining of pain and is describing the pain.  I know that that is subjective.  I understand that.  But at least the records do reflect the individual's complaints regarding the pain.  Would you agree, sir?

A     I'm [sic] saw in the records that there was prescriptions for long-term pain management using opioids, as I have cited.   And I would think that when someone has this pain and it's not an optimum candidate

for treatment along those lines.  Yes, I'm not a pain management expert.  I do not do, for example [inaudible] or blocks or I don't do any of those pain treatment technologies.  Therefore, I would defer to the expert.  But pain is certainly consistent with these findings.

Q     Thank you, sir, for that.   Basically - - and I understand, doctor, what you're saying 100 percent.  My question was from the issue that the records do reflect that the intensity and persistence of the claimant's symptoms have in fact been represented in the medical records.  Would you agree with that?

A     I think were saying, are you asking if the record appears to be consistent for pain?

Q     For - - yes, doctor, for pain that is intense and persistent for the claimant, yes.

A     Yeah, it does appear there is consistent, ongoing pain treatment in the record.
. . .

Q     Okay.  So when it comes to the review of the record, do you have an opinion, sir, as to whether the impairments that you have identified would result in this individual's having some what is called off-task behavior, meaning that whether he is cleaning, cooking, working, shopping, he would have trouble completing some tasks?

A     That's hard for me to say.  I think I've given you the limitations that I think are implied by the objective evidence.  You're getting subjective, and I don't feel I can give you an objective answer for that.

Q     Okay.

A     Sorry.

Q     No, fair enough.  So, doctor, then for the record, your testimony was solely based on objective findings in the record.  That's it?

A      That's what I said.

(Tr. 577–83.)

In giving the opinions of Dr. Thompson "great weight" the ALJ specifically noted that Dr. Thompson based his opinions "on his expertise, objective findings and medical evidence." (Tr. 504.) Thus, the ALJ did not view Dr. Thompson's testimony as supporting, negating, or quantifying Plaintiff's complaints of pain. The undersigned recommends that this was a reasonable construction of Dr. Thompson's testimony. Despite Plaintiff's attorney's best efforts, Dr. Thompson went out of his way to limit the basis for his opinions to only the objective evidence, he specifically stated that he could not quantify Plaintiff's pain, and he allowed only that some level of pain was consistent with the objective evidence and that there was "consistent, ongoing pain treatment in the record." (Tr. 581.)

Moreover, the ALJ did not discount Plaintiff's complaints of pain entirely; rather, she found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms, but that the claimant's subjective complaints and alleged limitations are not fully consistent with the medical and overall evidence…." (Tr. 502.) Thus, the undersigned recommends that there was nothing inconsistent about the ALJ giving the opinions of Dr. Thompson great weight while not addressing Dr. Thompson's testimony regarding Plaintiff's complaints of pain. Therefore, Plaintiff's argument should be rejected.

### V.     Conclusion

The Court does not make independent factual determinations, reweigh the evidence or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the undersigned respectfully recommends that the Commissioner's decision be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1.     The Commissioner's decision be **AFFIRMED**.

2.     The Clerk of Court be **DIRECTED** to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on January 16, 2020.

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record